UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| VANTICE L. BESHEARS ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 2:09-cv-172-WTL-JMS |
| ) | |
| THOMAS WEBSTER, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

      This is a *Bivens* action brought by Vantice Beshears, who was previously confined at the Federal Correctional Complex at Terre Haute, Indiana ("FCC"). *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). Having considered the pleadings, the defendants' motion for summary judgment, and the evidentiary record and briefs pertaining to such motion, and being duly advised, the court finds that the motion for summary judgment must be **granted**. This conclusion is based on the following facts and circumstances:

      1.      Beshears alleges that the defendants failed to provide adequate medical care for his "possible sciatica and L2-L3 desiscation degenerated intervertebral disk, with lower back pain radiating to the right lower extremities, namely [his] right leg condition."[1] Beshears claims that the pain began in July 2006, and continued through the filing of his complaint on May 11, 2009. He claims that the medication he was prescribed was not effective in relieving the pain and that there is a policy to avoid prescribing any pain medication. He seeks monetary damages.

      2.      *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers . . . ." *King v. Federal Bureau of Prisons,* 415 F.3d 634, 636 (7th Cir. 2005). Thus, to maintain an action under 28 U.S.C. § 1331, the plaintiff "must allege a violation of the United States Constitution or a federal statute." *Goulding v. Feinglass,* 811 F.2d 1099, 1102 (7th Cir. 1987). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994); *see Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005)("[C]onstitutional claims must be addressed under the most applicable provision."). Because *Bivens* creates a remedy, not a substantive right, *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir. 1995), this same inquiry governs claims asserted pursuant to *Bivens.*

      a.      The constitutional provision pertinent to Beshears' claim is the Eighth Amendment's proscription against the imposition of cruel and unusual punishment.

---

[1] Other claims were dismissed in the screening required by 28 U.S.C. § 1915A(b) and are not addressed further.

*Helling v. McKinney,* 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

b.   The Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997).

c.   "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition." *Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir. 2007)(some internal citations omitted). As to the second element, deliberate indifference requires a showing that the official was actually aware of a serious risk yet failed to take any action. *See Whiting v. Marathon County Sheriff's Dep't,* 382 F.3d 700, 703 (7th Cir. 2004); *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 765 (7th Cir. 2002).

3.   The FCC is a prison operated by the Federal Bureau of Prisons ("BOP"). The defendants are each medical providers–three physicians and two physician assistants–presently or employed by the BOP at the FCC. As noted, the defendants seek resolution of Beshears' claim through the entry of summary judgment.

a.   The motion for summary judgment must be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

b.   "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." **FED.R.CIV.P.** 56(e)(2). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

4.   For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Sain*

*v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998)); *see also Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). "[D]eliberate indifference may be inferred . . . when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

5. Beshears has not opposed the motion for summary judgment. The consequence of this is that he has conceded the versions of the facts properly supported in the motion for summary judgment. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56.1(h), of which Lopez was notified. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). This does not alter the standard for assessing a Rule 56(c) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

6. The following statement of undisputed material facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Beshears as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

   a. Beshears was confined at the FCC from from July 20, 2006, through June 9, 2009. The FCC is a prison complex operated by the BOP.

   b. The defendants are employed by the BOP and were assigned to the FCC as medical providers.

   c. Beshears underwent an initial medical screening the day he arrived at the FCC. At that time, it was noted that he voiced "no major medical complaints." He was seen a week later during morning "sick call rounds" in the Special Housing Unit ("SHU") relating to his complaint regarding receipt of medications following institutional transfer. His concern was resolved at that time. Beshears' prior diagnosed conditions included depression, asthma, cerebrovascular accident with seizures, headaches and sciatica.

   d. Dr. Reddy-Bolla examined Beshears on July 31, 2006, in conjunction with a regularly scheduled chronic care clinic. No leg or lower back pain was reported at this time. On August 10, 2006, Beshears reported to sick call complaining of pain in his right leg. He claimed to have been prescribed amitriptyline for this condition. Amitriptyline, also known as Elavil, is an antidepressant that was prescribed for Beshears at a prior institution for depression. On August 7, 2006, the prescription for Elavil was replaced with a prescription for Prozac for his diagnosed depression. Dr. Reddy-Bolla examined Beshears again on August 22, 2006, in conjunction with a regularly

        scheduled chronic care clinic.

    e.    Beshears was examined by medical personnel again on October 30, 2006, on November 14, 2006, December 15, 2006, February 14, 2007, February 20, 2007, April 3, 2007, July 13, 2007, September 18, 2007, June 17, 2008, January 9, 2009, and April 14, 2009. He refused to see medical personnel on July 2, 2007, and again on December 12, 2007, and refused regularly scheduled laboratory testing on April 21, 2008. In addition, records show that Beshears was noncompliant with directions and was manipulative in his use of medicine.

    f.    An MRI performed while Beshears was confined at the FCC revealed "desiccated degenerated intervertebral disc L2-L3" and "normal appearing vertebral bodies without focal lesions." Dr. Webster reviewed that report and concluded that no further action was warranted because the result of the report was basically "normal." Surgical treatment was not necessary or warranted because there was not a herniated disk present. Beshears was made aware of the MRI results and of this interpretation.

    g.    Throughout Beshears' confinement at the FCC, his reported back and leg pain was evaluated and treated in accordance with BOP Clinical Practice Guidelines and professional standards. This pain was likely attributable to his sciatica condition. Additionally, Beshears received appropriate monitoring and ongoing treatment via the mental health, hypertension, and pulmonary chronic care clinics and other health services visits and contacts. Beshears was not denied appropriate medical treatment while at the FCC,

For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998)); *see also Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). "[D]eliberate indifference may be inferred . . . when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

       A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). The evidentiary record in this case reveals that Beshears' complaints were appropriately treated. Based on the above evidence, the court concludes that Beshears received an abundance of care for his medical complaints and conditions. The fact that he did not receive the treatment he desired does not create a genuine issue of material fact to support his deliberate indifference claim. *See Johnson*, 433 F.3d at 1013 ("dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to sustain a claim of deliberate indifference). On the

contrary, the evidentiary record negates the presence of the subjective state of mind required to show deliberate indifference, *i.e.,* that the defendants were "subjectively aware of [Beshears'] serious medical needs and disregarded an excessive risk that a lack of treatment posed to his health or safety." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001). The defendants are therefore entitled to the entry of summary judgment. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996)("If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party.").

Although "'federal courts must take cognizance of the valid constitutional claims of prison inmates,'" *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)), Beshears has presented no claim of that nature in this case. For the reasons explained in this Entry, therefore, the defendants' motion for summary judgment (dkt 31) is **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 05/10/2010

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana