UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| VANTICE L. BESHEARS ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:09-cv-172-WTL-DKL |
| vs. ) | |
| ) | |
| THOMAS WEBSTER, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

This is a *Bivens* action brought by Vantice Beshears, who was previously and is now confined at the Federal Correctional Complex at Terre Haute, Indiana ("FCC"). *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). The claim remaining for resolution is that the defendants – Dr. Thomas Webster, Dr. William Wilson, Physician Assistant Joe Williams, Dr. David Lukens, and Physician Assistant Michael Armstrong – failed to provide adequate medical care for Beshears' "possible sciatica and L2-L3 desiscation degenerated intervertebral disk, with lower back pain radiating to the right lower extremities, namely [his] right leg condition." Beshears claims that the pain began in July 2006, and continued through the filing of his complaint on May 11, 2009. He claims that the medication he was prescribed was not effective in relieving the pain and that there is a policy to avoid prescribing any pain medication. He seeks monetary damages.

**Background**

The defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on October 27, 2009. The Court granted the motion and entered judgment in favor of the defendants on May 10, 2010. Beshears filed a Motion for Reconsideration on June 7, 2010. The Court granted that motion, reopened the action, and granted Beshears through July 15, 2010, to respond to the motion for summary judgment. Beshears filed a Notice of Filing on July 16, 2010. Included in that filing was a document entitled "Affidavit" and one entitled "Plaintiff's Rebuttal Affidavit to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support." Beshears then filed a Motion for Extension of Time on July 19, 2010. That motion was granted on July 21, 2010. However, Beshears has not filed any additional materials. The Court therefore treats the materials filed on July 16, 2010, as Beshears' response to the motion to dismiss, or in the alternative, motion for summary judgment.

**Standard of Review**

Because Beshears' complaint states a claim upon which relief could be granted, the Court treats the defendants' motion as a motion for summary judgment. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007).

To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in his favor. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Factual disputes are genuine "only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented," and they are material only if their resolution might change the suit's outcome under the governing law. *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010).

AThe nonmovant will successfully oppose summary judgment only when [he] presents definite, competent evidence to rebut the motion.@ *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). *See Fed.R.Civ.P.* 56(c)(1)(A),(B)(Both the party Aasserting that a fact cannot be@ and a party asserting that a fact is genuinely disputed must support their assertions by Aciting to particular parts of materials in the record,@ or by Ashowing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.@).

**Statement of Facts**

The following statement of undisputed material facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Beshears as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Beshears was confined at the FCC from July 20, 2006, through June 9, 2009. Beshears underwent an initial medical screening the day he arrived at the FCC. At that time, it was noted that he voiced Ano major medical complaints.@ He was seen a week later during morning Asick call rounds@ in the Special Housing Unit (ASHU@) relating to his complaint regarding receipt of medications following institutional transfer. His concern was resolved at that time. Beshears= prior diagnosed conditions included depression, asthma, cerebrovascular accident with seizures, headaches and sciatica. Records revealed that Beshears was found to be "in no distress" and he verbalized understanding regarding medical instructions.

Sciatica is "pain along the course of a sciatic nerve . . . caused by compression, inflammation, or reflex mechanisms." Sciatic nerves are "either of the pair of largest nerves in the body that arise from the sacral plexus and that pass out of the pelvis and through the greater sciatic foramen and down the back of the thigh to its lower third where division into the tibial and common peroneal nerves occurs." Sciatica may feel like a "leg cramp" that lasts for several weeks. *See* American Academy of Orthopedic Surgeons, *Your Orthopedic Connection: Sciatica* (2007), *at* http://orthoinfo.aaos.org/topic.cfm?topic=A00351. Other symptoms may include weakness in the leg, a burning or tingling sensation down the leg, and "pins and needles" numbness. Causes of sciatica include the general "wear and tear" of aging, along with sudden pressure on the disks that cushion the vertebrae of the lower spine. *Id*. Sciatica is a condition that usually heals itself with sufficient rest and time. Ibuprofen may reduce inflammation, as well as aspirin and muscle relaxants. Surgical treatment is only helpful and necessary if a herniated disk is pressing on the sciatic nerve.

Dr. Reddy-Bolla, who is not a defendant in this action, examined Beshears on July 31, 2006, in conjunction with a regularly scheduled chronic care clinic visit. While the records reflect that he did not report lower back pain at this time, Beshears states that he did report pain. On August 10, 2006, Beshears reported to sick call complaining of pain in his right leg. He claimed to have been prescribed amitriptyline for this condition. Amitriptyline, also known as Elavil, is an antidepressant that was prescribed for Beshears at a prior institution for depression. On August 7, 2006, the prescription for Elavil was replaced with a prescription for Prozac for his diagnosed depression. Dr. Reddy-Bolla examined Beshears again on August 22, 2006, in conjunction with a regularly scheduled chronic care clinic visit.

Physician Assistant Armstrong evaluated Beshears during sick call on October 30, 2006. Beshears requested a permanent "bottom bunk pass" during this visit. Beshears claimed he was feeling light-headed and slightly dizzy when getting out of bed in the morning or getting up suddenly since he began taking valproic acid approximately one week prior, and asked if this would be a reason for issuing a "bottom bunk pass." Beshears was found to be in no acute distress. Beshears was assessed with a possible medication side effect and was informed the temporary side effects of his new medication would pass and would not qualify him to receive a permanent "bottom bunk pass." However, Beshears was issued a "bottom bunk pass" based on a history of seizures. Beshears states that he did mention leg and back pain during this encounter.[1]

On November 14, 2006, Armstrong evaluated Beshears during sick call based on his complaint of a headache. Beshears requested Advil for a headache, and also requested a refill on other medications. In lieu of requiring Beshears to purchase Advil from the institution commissary, Naproxen was prescribed based on his indigent status. Beshears states he also mentioned his back and leg pain at this encounter.

---

[1] Beshears alleges, without support, that Armstrong did not write down complaints regarding pain due to a policy not to treat inmates' painful conditions, but he has no evidence of any such policy. He also states that every medical staff member tells him just to learn to live with the pain, but this statement is too general to create a genuine issue of material fact.

No complaints were received from Beshears regarding leg or lower back pain again until December 12, 2006, when he requested to be seen at sick call for "right leg pain behind the knee that is increasing in intensity."[2] Armstrong saw Beshears for his sick call request on December 12, 2006, at which time he requested Naproxen. A varicose vein in Beshears' right leg was diagnosed, and he was prescribed Enteric (coated aspirin) and Naproxen. Varicose veins are common, and not usually the sign of a serious medical issue. Evaluation of Beshears confirmed his varicose veins could be best treated by the aforementioned medications and self-care measures such as regular exercise, elevating the affected leg, and possibly wearing compression stockings.

On February 14, 2007, Beshears was involved in a physical altercation with another inmate. Physician Assistant Williams conducted an evaluation following the altercation, which revealed scratches to Beshears' left shoulder blade, contusions to the facial bones under each eye, and a bloody nose. Additionally, Beshears complained of pain in his back and on the right side of his head. The examination revealed a normal range of motion of Beshears' cervical spine. Beshears was again evaluated by Williams six days later, on February 20, 2007, during morning sick call rounds in the SHU at FCC Terre Haute. Beshears complained of neck and lower back pain. Beshears reported active movement of his neck was painful, but movement was possible.

Dr. Webster evaluated Beshears on April 3, 2007, in conjunction with a regularly scheduled chronic care clinic visit. While the records reflect that Beshears reported that he was in no pain, Beshears states he was never asked about his pain level.

Williams' last contact with Beshears occurred during sick call on July 13, 2007. At that time, Beshears complained of pain in his right foot, and requested support hose for varicose veins. Bruising near the dorsum of Beshears' right foot was noted. An x-ray of Beshears' right foot was ordered to rule out causes other than a contusion and he was prescribed support hose and Naprosyn. The Naprosyn was to be taken twice daily for a period of seven days.

Dr. Webster evaluated Beshears on September 18, 2007, in conjunction with a regularly scheduled chronic care clinic visit. Beshears' physical examination was normal. Dr. Webster evaluated Beshears again on March 18, 2008, in conjunction with a regularly scheduled chronic care clinic visit. The physical examination was normal. Beshears states that he complained of pain at this visit.

An MRI performed on June 17, 2008, revealed Adesiccated degenerated intervertebral disc L2-L3" and Anormal appearing vertebral bodies without focal lesions.@ Dr. Webster reviewed that report and concluded that no further action was warranted because the result of the report was basically Anormal.@ Surgical treatment was not necessary or warranted because there was not a herniated disk present. Beshears was made aware of the MRI results and of this interpretation.

---

[2]Beshears' statement that this statement is untrue is not specific enough to create a genuine issue of material fact, as he does not offer any specific admissible evidence to contradict it.

Dr. Wilson's only contact with Beshears occurred on January 9, 2009, when he evaluated him in conjunction with scheduled mental health, hypertension, neurology, and pulmonary care clinics. During the examination, Beshears complained of occasional discomfort up the back of his leg and in his knee and muscle spasms. The physical examination was benign, with a normal femoral pulse and normal dorsalis pedis. Dr. Wilson prescribed Piroxicam to be taken orally for ninety days, with one refill, for Beshears' reported knee pain. Piroxicam is a nonsteriodal anti-inflammatory drug used to reduce pain, swelling and joint stiffness.

Armstrong evaluated Beshears on April 14, 2009, in conjunction with a regularly scheduled chronic care clinic visit. During this visit, Armstrong prescribed Acetaminophen in place of the previously prescribed Piroxicam. Beshears voiced no medical complaints during this evaluation, and his chronic medical issues were assessed to be progressing at the treatment goal. Additionally, Beshears verbalized understanding regarding his evaluation and treatment plans.

Dr. Lukens did not provide any medical treatment to Beshears at any time during his incarceration at FCC Terre Haute. Additionally, Lukens has no personal knowledge of Beshears, and had no clinical encounters with him.[3]

## Discussion

The constitutional provision pertinent to Beshears= claim is the Eighth Amendment=s proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

The Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). APrison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition.@ *Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir. 2007)(some internal citations omitted). With respect to the first element, at this stage the defendants do not dispute that Beshears' condition was objectively serious.

As to the second element, deliberate indifference requires a showing that the official was actually aware of a serious risk yet failed to take any action. *See Whiting v. Marathon County Sheriff's Dep't,* 382 F.3d 700, 703 (7th Cir. 2004); *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 765 (7th Cir. 2002). Beshears' frustration with his chronic pain is understandable. But for a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not

---

[3]Beshears asserts that Dr. Lukens prescribed him medicine at least once, but also states: "Dr. Lukens may have not provided direct treatment, but he is involved in the policy decisions that effected [sic] the Plaintiff." This is not sufficient to raise an issue of material fact regarding whether Lukens treated Beshears.

base the decision on such a judgment." *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County,* 163 F.3d 982, 988 (7th Cir. 1998)); *see also Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). The Eighth Amendment does not provide a right to "demand specific care" or "the best care possible." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). An inmate is entitled only "to reasonable measures to meet a substantial risk of serious harm." *Id.*

Based on the above evidence, the court concludes that Beshears received an abundance of care for his medical complaints and conditions. He was seen regularly in chronic care clinic and for sick call visits. He was prescribed pain medications and other medications that the medical staff deemed appropriate. While it may be that on a few occasions, Beshears complained of pain and received no treatment, a review of the totality of his care shows that he was regularly examined and treated for his conditions, including pain. His complaints amount to a disagreement with the care provided, the results of the testing that was performed, and the medicine prescribed. The fact that he did not receive the treatment he desired or that he disagreed with the doctors' interpretation of their examinations and tests does not create a genuine issue of material fact to support his deliberate indifference claim. *See Johnson*, 433 F.3d at 1013 (Adissatisfaction or disagreement with a doctor=s course of treatment is generally insufficient@ to sustain claim of deliberate indifference). On the contrary, the evidentiary record negates the presence of the subjective state of mind required to show deliberate indifference, *i.e.,* that the defendants were "subjectively aware of [Beshears=] serious medical needs and disregarded an excessive risk that a lack of treatment posed to his health or safety." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001). The defendants are therefore entitled to the entry of summary judgment. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996)(AIf the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party.@).

For the reasons explained in this Entry, therefore, the defendants= reinstated motion for summary judgment [31] is **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 04/12/2013

Copy by United States Mail to:

Vantice L. Beshears
13832-026
Terre Haute FCI
P.O. Box 33
Terre Haute, IN 47808

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution to all registered counsel by electronic notification via CM/ECF